IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TONY TERRELL ROBINSON, #18099-041, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 17-CV-1381-JPG |
| R. MORRIS, MR. GARVER, T.G. WERLICH, LT. SMITH, LT. VAN GRUNDY, and USA | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Tony Terrell Robinson, an inmate currently housed at Greenville Federal Correctional Institution ("Greenville"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Specifically, he alleges that his constitutional right to equal protection[1] was violated in connection with his prison employment as a sewing technician with UNICOR. (Doc. 1). In addition, Plaintiff asserts unrelated claims for retaliation and conspiracy to retaliate in connection with his employment at the prison's law library. Although not expressly invoked, Plaintiff may also be attempting to bring claims under the

---

[1] Plaintiff cites the Fourteenth Amendment as the basis for his Equal Protection claim, but because he is a federal prisoner, the applicable basis for his claim is the equal protection principles read into the Fifth Amendment. *See, e.g., Markham v. White*, 172 F.3d 486, 491 (7th Cir. 1999) ("When a case is brought against federal officials, the equal protection clause of the Fourteenth Amendment does not provide the theoretical basis for the claim. Instead, courts turn to the due process clause of the Fifth Amendment, which has been understood to incorporate equal protection principles....").

Federal Tort Claims Act ("FTCA"), the Rehabilitation Act ("RA"), and/or the Americans with Disabilities Act ("ADA"). He sues Defendants for monetary, declaratory, and injunctive relief.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

The Court must also consider whether misjoinder is an issue. The Court retains authority to sever unrelated claims against different defendants into one or more additional lawsuits for which Plaintiff will be assessed a filing fee. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. The Seventh Circuit strongly encourages district courts to use severance when faced with an omnibus or scattershot complaint, *Owens v. Evans*, -- F.3d --, 2017 WL 6728884, *1 (7th Cir. Dec. 28, 2017), and discourages courts from allowing a prisoner "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). In a misjoinder situation, severance may occur before preliminary review, allowing the district court to create multiple suits, which can then be separately screened. *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012).

## Preliminary Matter - Injunctive Relief

Plaintiff's request for relief (Doc. 1, pp. 22-23) includes several requests for "preliminary and permanent" injunctive relief. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

At this time, Plaintiff's request for preliminary injunctive relief shall be denied for two reasons. First, Plaintiff has not filed a separate motion for a preliminary injunction. Second, Plaintiff's allegations do not support this form of drastic relief: He has not demonstrated or alleged that he faces any immediate or irreparable injury or loss and the Court cannot conclude that he is likely to succeed on the merits.

Therefore, any requests for preliminary injunctive relief are **DENIED** without prejudice. Should Plaintiff's situation change, necessitating emergency intervention by the Court, Plaintiff may file a new motion for a preliminary injunction, in the appropriate action, pursuant to Rule 65(a).

## The Complaint

Plaintiff names R. Morris (Supervisor of Education – Greenville), Mr. Garver (Factory Floor Manager, UNICOR), T.G. Werlich (Warden, Greenville), F. Varney (Supervisor of Recreation, Greenville), Lt. Smith (Head of SIS – Special Investigation Section), Lt. Van Grundy (Lieutenant, Greenville), and the United States as Defendants. Plaintiff states that he is attempting to bring claims for equal protection, retaliation, and conspiracy to retaliate under

3

*Bivens*. Plaintiff does not invoke the FTCA, RA, and/or ADA. However, portions of the Complaint suggest that Plaintiff may also be attempting to bring claims under these statutes.

Plaintiff's Complaint can be roughly divided into two sets of claims: (1) claims pertaining to Plaintiff's UNICOR job as a sewing technician and (2) claims pertaining to Plaintiff's job as an orderly at the prison's law library.

**UNICOR Sewing Employment**

Plaintiff arrived at Greenville on October 3, 2016. (Doc. 1, p. 3). Upon arrival, Plaintiff completed an application for UNICOR and was placed on the UNICOR waiting list. *Id.* During the first week of November 2016, Plaintiff was placed in UNICOR 6, the pre-industrial class. *Id.* The pre-industrial class lasted two weeks. *Id.* As part of this class, Plaintiff completed orientation, a 30 hour sewing class, and a sewing test. *Id.* Once Plaintiff completed training, he did not immediately begin working. *Id.* Instead, he was placed on "lay in" status. *Id.* Initially, Garver told Plaintiff he was being placed on lay-in status due to the lack of production work on the factory floor. *Id.* However, Plaintiff began to notice that other inmates, who completed training after Plaintiff completed his training, were beginning to work. (Doc. 1, pp. 3-4). Plaintiff questioned Garver about this on several occasions. *Id.* At one point, Garver told Plaintiff, "I'll get you in." (Doc. 1, p. 3). On another occasion, Garver told Plaintiff he needed to know someone to start working. (Doc. 1, p. 4).

On January 24, 2017,[2] Officer Vaughn directed Plaintiff to report to UNICOR at 8:30 am. *Id.* Plaintiff was assigned to Crew 3 and told he would be training for several weeks. *Id.* Plaintiff informed his supervisor he would not be reporting to work the next day because he was

---

[2] Paragraph 11 of the Complaint indicates that this occurred on January 24, 2016. (Doc. 1, p. 4). However, the Court believes this is a typographical error.

sick and planned to attend sick-call. *Id.* Plaintiff did not report to work on January 25, 2017 or January 26, 2017. *Id.* On January 26, 2017, Plaintiff was designated "medically IDLE" for the remainder of the week. *Id.* Although Plaintiff had a medically IDLE pass, the Crew 3 supervisor terminated him. After speaking with several individuals, it was determined that Plaintiff's termination was a mistake and his employment was reinstated. (Doc. 1, pp. 4-5).

In February 2017, Plaintiff spoke with Garver regarding his mistaken termination and complained about Garver's hiring practices. (Doc. 1, pp. 5-6). Specifically, Plaintiff believed that other inmates who were hired and trained after Plaintiff began working before Plaintiff. *Id.* Plaintiff believed this practice was a violation of his equal protection rights. *Id.* Garver told Plaintiff the other inmates had previous UNICOR experience. (Doc. 1, p. 6).

Plaintiff also approached Garver regarding an injury to his right ankle. (Doc. 1, p. 6). Plaintiff's UNICOR employment involved using the right foot to operate a sewing machine. *Id.* Plaintiff indicated using his right foot to operate the machine was causing pain to his right ankle. Plaintiff asked Garver if he could make an accommodation for Plaintiff's injured ankle, if there were left-footed machines, and/or if Plaintiff could be assigned to a new position. *Id.* Garver denied Plaintiff's requests. *Id.*

On February 9, 2017, a physician's assistant placed Plaintiff on "No Duty Medical IDLE" due to his right ankle pain. *Id.* Plaintiff's status was changed to half day work days on February 27, 2017. (Doc. 1, p. 7). On February 28, 2017, at Plaintiff's request, his "Medical Idle" status was changed. *Id.* On March 1, 2017, Plaintiff reported to Garver and told him his medical status had been changed and that he found a different job in the prison law library. *Id.* Garver asked Plaintiff to write a "cop-out" stating that he quit. *Id.* Plaintiff wrote a letter of resignation that same day, stating as follows:

> Due to the discrimination practices and the refusal to accommodate me for my known injury outlined in the procedural history above, I regretfully state, that I was left with no choice but, to resign from my position in UNICOR or to continue to injure myself. I chose not to endure more pain and resigned. I respectfully request that I receive all payments due to me including, but not limited to, vacation pay, longevity time, and any salary. Also, I hope in the future that this organization and its employees consider the disabilities of it's employees and retain the true meaning of Equal Opportunity when it comes to hiring.

(Doc. 1, p. 7).

According to the Complaint, the "unequal treatment by Garver for no rational reason" violated Plaintiff's equal protection rights. (Doc. 1, pp. 3-6, 21). Plaintiff claims that because of the initial delay in his employment, he "lost wages and advancement opportunities." (Doc. 1, p. 6). Plaintiff also alleges that Garver's conduct "violated Illinois Tort Laws and the Laws of the State." (Doc. 1, p. 21).

**Orderly Job at the Prison Law Library**

In March 2017, Plaintiff began working in the law library as an orderly. (Doc. 1, pp. 9, 14). During the month of March, Plaintiff received two pay checks accompanied by favorable performance reviews. (Doc. 1, p. 9). On April 14, 2017, Morris, the Supervisor of Education, posted a notification regarding evening library procedures, which stated:

> Effective immediately, the library will be open to inmates during the first move after the 4:00 pm count has cleared. Inmates wishing to utilize the library during this move will do so with the understanding that it constitutes a one-way move into education and that they must remain in the library during the entirety of the evening meal. All other moves to and from the Education Department will be conducted in accordance with standard movement procedures.

*Id.* Plaintiff objected to this revised procedure. (Doc. 1, p. 9). He believed the procedure forced inmates to choose between eating an evening meal and attending the law library. *Id.* Plaintiff complained to Captain Patterson (not a defendant in this action). *Id.* He told Captain Patterson

that inmates should not have to choose between eating and having access to the courts. *Id.* At Captain Patterson's request, Plaintiff put his complaint in writing by submitting a "cop-out." (Doc. 1, pp. 9-10). When Plaintiff's complaint was not immediately addressed, Plaintiff complained, in writing, to Werlich. (Doc. 1, p. 10).

On May 4, 2017, Plaintiff spoke to Captain Patterson regarding his "cop-out" and his subsequent letter to Werlich. (Doc. 1, pp. 10-11). While explaining his concerns, Plaintiff made comments about the evening and weekend schedules of law library employees (non-inmate employees). (Doc. 1, p. 11). Captain Patterson said he would speak with Morris and revisit the issue with Plaintiff at a later date. *Id.* Later that day, Plaintiff met with Morris and Varney, the Supervisor of Recreation. (Doc. 1, p. 12). Morris spoke with Plaintiff regarding his letter to the warden, the new library policy, and Plaintiff's concerns regarding the library policy. *Id.* Morris then informed Plaintiff that Plaintiff was being fired due to security concerns. *Id.* Specifically, Morris indicated he was concerned that Plaintiff had made comments regarding staff schedules, stating:

> I have to let you go, because it is a security issue, you are paying too close attention to my staff's comings and going…You told [a non-inmate employee] earlier today that [another non-inmate employee] could work in the evening time, because he isn't even a teacher that teaches a class."

*Id.* Plaintiff insisted he was only exercising his First Amendment right to express an opinion. *Id.* Morris indicated he would speak to Plaintiff's counselor and have him reassigned to a new position. *Id.*

The following day, Plaintiff began submitting letters and grievances to various individuals regarding his termination. (Doc. 1, p. 13). He asked for additional information regarding why he was terminated and complained that he was terminated in retaliation for

7

complaining about the new law library policy. *Id.* On May 10, 2017, Plaintiff received the following response to one of his complaints:

> [T]he determination to have your assignment reassigned was based on the observation of you attempting to exert some sort of control or influence over staff schedules, which had been determined through good faith bargaining with local union staff. This determination was based solely on the fact that your monitoring of education staff member's schedules presented a security concern that warranted reassignment to another work detail within the institution.

*Id.*

On May 16, 2017, after speaking with Morris, Plaintiff learned that he was prohibited from working in any position within the Education Department. (Doc. 1, p. 14).[3] From May 2017 through August 2017, Plaintiff pursued certain administrative remedies, continued to submit written grievances, complaints, and questions pertaining to his termination, and received various responses to the same. (Doc. 1, pp. 14-16).

On August 4, 2017, Plaintiff met with Morris, Varney, Smith, and VanGrundy. (Doc. 1, p. 18). Smith instructed Plaintiff to stand without touching the desk. *Id.* Smith then asked, "Why are you questioning about staff schedules and also why are you questioning about the operation of safety and security of the institution?" *Id.* Plaintiff insisted he had not been inquiring about these issues and that his only concern was the new policy regarding the library's evening hours. *Id.* Smith responded stating that he was going to give Plaintiff the benefit of the doubt and "not get rid of [him] now." *Id.* But, he also said that Plaintiff was now on his radar and if Plaintiff "continue[d] to probe and ask questions about the safety and security of this institution and keep grieving about every little thing, that I will ship you to a place where you do not want to go and you won't like where I will have you sent." (Doc. 1, pp. 18-19).

---

[3] The law library is a part of the Education Department.

Plaintiff indicated that he understood and asked if Morris would be responding to his most recent grievance. (Doc. 1, p. 19). Smith said he would advise Morris regarding how to respond and Morris would decide whether or not to follow his advice. *Id.* After the meeting, Morris responded to one of Plaintiff's letters. (Doc. 1, p. 19). Morris told Plaintiff his letter included questions pertaining to the safe and orderly operation of the institution, that these matters would not be discussed with an inmate, and that the Special Investigation Section was notified about Plaintiff's inquiries. *Id.* From August 2017 through October 2017, Plaintiff pursued certain administrative remedies and received responses to the same. (Doc. 1, pp. 19-20).

Plaintiff claims that Morris terminated him from his position as retaliation for his complaints about the new law library hours and that this conduct violated Illinois law. (Doc. 1, p. 21).

Plaintiff claims that Morris, Varney, Smith, and Van Grundy conspired to retaliate against him. *Id.* This claim appears to be premised on the meeting that occurred on August 4, 2017, where Smith warned Plaintiff about his behavior. Plaintiff also claims that the "Conspiracy to Retaliate" amounts to a violation of "the laws of the State of Illinois." *Id.*

Finally, Plaintiff claims that the disputed law library policy violated his right of access to the Courts. *Id.* Although it is not entirely clear, this claim appears to be directed at Morris.

### Dismissal of T.G. Werlich

Plaintiff has named T.G. Werlich, Grenville's Warden, as a defendant in the Complaint. The Complaint, however, does not include any allegations establishing that he was personally involved in the underlying constitutional violations. At most, Werlich was involved in reviewing and responding to some of Plaintiff's grievances.

Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g., Owens v. Evans,* No. 16-1645, 2017 WL 6728884, at *3 (7th Cir. Dec. 13, 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."); *George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Nonetheless, an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).

Here, the claims pertaining to Werlich suggest nothing more than involvement in the grievance process by an individual who was not involved in the underlying constitutional violations. There is no indication that Werlich is subject to liability under the standard articulated in *Perez* or related authority. As such, Plaintiff's claims pertaining to Werlich fall short of stating a constitutional claim and shall be dismissed without prejudice.

However, Plaintiff is seeking injunctive and declarative relief. With respect to these requests, Greenville's Warden, in his official capacity, is the appropriate party. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, Werlich will remain on the docket, in his official capacity only, for purposes of carrying out any injunctive relief that is ordered.

## FTCA Claims

A federal prisoner who seeks relief for the misconduct of federal agents has three options for obtaining relief in federal court. He may bring a suit against the United States under the

FTCA for misconduct of federal agents that is considered tortious under state law. *Sisk v. United States*, 756 F.2d 497, 500 n.4 (7th Cir. 1985) (citing 28 U.S.C. §§ 1346(6), 2680). He may bring a suit against the agent for a violation of his constitutional rights under the theory set forth in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Id*. Or, he may bring both types of claims in the same suit. *See, e.g., Ting v. United States*, 927 F.2d 1504, 1513 n. 10 (9th Cir. 1991).

Plaintiff has indicated that he is bringing this suit pursuant to *Bivens* (Doc. 1, p. 1), and does not reference the FTCA in his Complaint. However, Plaintiff has named the United States as a defendant and claims that the conduct of certain officials violated Illinois law and/or Illinois tort law. (*See* Doc. 1, p. 21, claiming that Garza's hiring practices "violated Illinois Tort Laws and the Laws of the State[s];" *Id.* claiming that alleged acts of retaliation violated the "Laws of the State of Illinois;" and *Id.* claiming that the alleged conspiracy violated the "laws of the State of Illinois"). The FTCA is the only statute under which plaintiff could assert a common law tort claim against the United States. Accordingly, the Court has construed these allegations as an attempt to bring claims under the FTCA (*see* Counts 4 and 8, below).

## Division of Counts

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Claim based on the Fifth Amendment right to equal protection against Garza for his hiring practices (allowing other inmates who completed training after Plaintiff to begin working before Plaintiff) in connection with Plaintiff's UNICOR job as a sewing technician;

**Count 2:** Claim under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12132) against Garza for failing to accommodate Plaintiff's disability (injured ankle), thereby depriving him of his UNICOR job as a sewing technician;

**Count 3:** Claim under the Rehabilitation Act (29 U.S.C. § 701) against Garza for failing to accommodate Plaintiff's disability (injured ankle), thereby depriving him of his UNICOR job as a sewing technician;

**Count 4:** Tort claim against the United States for unlawfully depriving Plaintiff of property by delaying Plaintiff's start-date as a UNICOR sewing technician and/or causing Plaintiff to resign from the same;

**Count 5:** First Amendment retaliation claim against Morris for terminating Plaintiff from his job as an orderly in the law library;

**Count 6:** First Amendment claim against Morris, Varney, Smith, and Van Grundy for conspiring to retaliate against Plaintiff on August 4, 2017;

**Count 7:** First Amendment access to the courts claim against Morris for implementing the disputed law library policy; and

**Count 8:** Tort claim against the United States for retaliatory discharge for terminating Plaintiff from his position as an orderly in the prison law library as retaliation for Plaintiff's complaints about the law library.

## Severance

Plaintiff's constitutional claims can generally be divided into two distinct groups: First, the claims that arose from Plaintiff's UNICOR job as a sewing technician (Counts 1-4), and second, the claims related to his employment as an orderly at the prison's law library (Counts 5-8). These claims are not transactionally related; they involve independent allegedly unconstitutional acts, occurring at different points in time, in connection with two different jobs

at the prison.[4] Further, although both groups of claims include tort claims that Plaintiff brings against the United States of America under the FTCA (Counts 4 and 8), they involve different Defendants (the sewing technician claims are directed at Garza and/or are premised on his conduct and the orderly claims are directed at Morris, Varney, Smith, and Van Grundy and/or are premised on their conduct).

Counts 1-4 shall remain in the instant action, and the merits of these claims shall be reviewed in this order. As shall be explained below, Count 4, the claim directed against the United States, does not survive threshold review under § 1915A. Accordingly, no claims will remain out of Counts 1-4 against the United States of America. Further, Counts 5-8 involve different Defendants and are not transactionally related to the Counts 1-4. Accordingly, Counts 5-8 shall be severed into a separate action. This separate action, for Counts 5-8, will have a newly assigned case number and shall be assessed a filing fee. The severed case shall undergo preliminary review pursuant to § 1915A after the new case number and judge assignment has been made.

### Merits Review 1915A – Counts 1 -4

### Count 1

"The Equal Protection Clause ... prohibits state action that discriminates on the basis of

---

[4] Federal Rule of Civil Procedure 20 does not allow Plaintiff to include separate claims against different defendants or sets of defendants in the same lawsuit. The rule prohibits a plaintiff from joining many defendants in a single action unless the plaintiff asserts at least one claim for relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir.2007). Although Federal Rule of Civil Procedure 18 allows a party to join unrelated claims against defendants in a suit, this rule applies only *after* the plaintiff has satisfied Rule 20's requirements for joinder of parties. *Intercon Research Assn., Ltd. v. Dresser Ind., Inc*., 696 F.2d 53, 57 (7th Cir.1983) (quoting 7 Charles Alan Wright, Federal Practice & Procedure). This means that the core set of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those defendants under Rule 18.

13

membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.' " *Reget v. City of La Crosse, Wis.*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff's equal protection claim is a "class of one" claim because he believes he was improperly singled out for discriminatory treatment, *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010), and he does not allege that he has been discriminated against because of a protected classification such as race, sex or national origin. *Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010). To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Swanson v. Chetek*, 719 F.3d 780, 784–85 (7th Cir. 2013) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Supreme Court in *Engquist v. Oregon Department of Agriculture* held that "a 'class-of-one' theory of equal protection has no place in the public employment context." 553 U.S. 591, 594 (2008). In *Engquist*, an employee of the state of Oregon was denied a promotion and ultimately terminated. 553 U.S. at 594-95. She brought several claims regarding her termination, including a class-of-one claim. *Id*. at 595. The Court rejected the viability of her class-of-one claim, noting that such a claim was a "poor fit in the public employment context." *Id*. at 605. "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id*.

*Engquist's* reasoning is equally applicable to the instant case involving employment in a federal prison work program. *See Alexander v. Lopac*, No. 11 C 50012, 2011 WL 832248, at *2

(N.D. Ill. March 3, 2011) (dismissing at threshold stage class-of-one claim for denial of position in prisoner work program) (collecting cases); *Floyd v. Blaesing*, No. 11-cv-3444, 2012 WL 424854, at *2 (C.D. Ill. Feb. 9, 2012) (dismissing at threshold stage class-of-one claim for denial of job while in detention). Plaintiff believes that by exercising his broad discretion to delay Plaintiff's start date and/or by not providing certain accommodations (causing Plaintiff to resign from his position) Garza violated Plaintiff's right to equal protection. However, situations involving this type of broad discretion are exactly what the *Engquist* Court recognized were not covered by a "class-of-one" claim. *See Abcarian*, 617 F.3d at 939 ("We have interpreted Engquist to stand for the broad proposition that inherently subjective discretionary governmental decisions may be immune from class-of-one claims."). "Additionally, it would be anomalous to allow a prisoner to bring such a claim when corrections officers themselves cannot." *Lopac*, 2011 WL 832248, at *2.

Because Plaintiff's class-of-one claim is not viable given its context, it will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### Counts 2 and 3[5]

As a preliminary matter, the Court notes that Plaintiff has not named a proper defendant with respect to Counts 2 and 3. The proper defendant with respect to these claims is the agency, in this case the Federal Bureau of Prisons, or its director (in his official capacity). *See* 42 U.S.C. § 12131(1)(b); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012) (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Normally, the Court would give Plaintiff the opportunity to correct this mistake by

---

[5] According to the Complaint, Plaintiff suffered from an ankle injury and believes this injury constitutes a disability. In evaluating these claims, the Court assumes, without deciding, that Plaintiff is a qualified person with a disability.

15

amendment. However, as is explained more fully below, even if Plaintiff had named a proper defendant, his ADA and RA claims would fail. Accordingly, amendment would be futile.

Pursuant to Title I of the ADA, covered employers are prohibited from discriminating against qualified individuals with disabilities in hiring and employment because of their disabilities. 42 U.S.C. § 12112(a). Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

A prisoner's claim that he suffered discrimination in connection with a vocational program, such as a work release program, is governed by Title II of the ADA. *See Neisler v. Tuckwell,* 807 F.3d 225, 227-28 (7th Cir. 2015). However, workplace discrimination on the basis of a disability in connection with *paid prison employment* is governed exclusively by Title I of the ADA. *Id.* (paid prison employment is not to be equated with a vocational program and does not constitute "services, programs, or activities" under the statute). In the instant case, Plaintiff alleges he was discriminated against in connection with paid prison employment. Therefore, his ADA claim must proceed, if at all, under Title I of the Act.

That being said, Plaintiff cannot pursue a claim under Title I or Title II of the ADA. With respect to Title I of the ADA, the United States is not an "employer" subject to the ADA.

*See* 42 U.S.C. § 12111(5)(B)(i).[6] With respect to Title II of the ADA, the federal government is not included within the ADA's definition of "public entity." *See* 42 U.S.C. § 12131(1).

Plaintiff's RA claim is also precluded. As with Title II of the ADA, the RA prohibits a disabled person from being excluded from participating in, being denied the benefits of, or being subjected to discrimination in any program or activity that receives federal funds. 29 U.S.C. § 794(a). The relief available under the RA and Title II of the ADA is coextensive. *Jaros*, 684 F.3d at 671.

The Seventh Circuit has allowed prisoners to pursue claims under the RA relating to participation in vocational *programs. See Jaros,* 684 F.3d at 673 (permitting plaintiff to proceed with his RA claim that IDOC prevented him from participating in work release program because of his cane). However, as noted above, the Seventh Circuit subsequently held that *paid prison employment* is not to be equated with a vocational program and does not constitute an activity, service, or program. *Neisler,* 807 F.3d at 227-28. As such, to the extent that Plaintiff is bringing an RA claim in connection with his paid employment, the claim is subject to dismissal with prejudice.

## Count 4

The Complaint suggests that Garza unlawfully deprived Plaintiff of property. Specifically, lost wages during the time period when he was unemployed and/or loss of his UNICOR job as a sewing technician. Plaintiff, however, had no claim of entitlement to his prison job. It is well-settled that a prisoner has no constitutionally protected liberty or property

---

[6] The Seventh Circuit has also stated that it is "questionable whether a prisoner working at a prison job qualifies as an 'employee' within the meaning of Title I." *Neisler v. Tuckwell*, 807 F.3d 225, 228 (7th Cir. 2015).

interest in prison employment or a particular prison job. *See Wallace v. Robinson,* 940 F.2d 243, 248-49 (7th Cir. 1991); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), cert. denied, 459 U.S. 1150 (1983); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49–50 (5th Cir. 1995). Further, Illinois is an at-will employment state.[7] *Harris v. Eckersall*, 331 Ill.App.3d 930 (Ill. App. Ct. 2002); *Lyznicki v. Board of Educ., School Dist.* 167, Cook county, Ill., 707 F.2d 949 (7th Cir. 1983). Thus, "absent a specific contract to the contrary, employment contracts are terminable at will…[A]n at-will employee can be terminated at any time for any reason or no reason, [and] an at-will employee has no property interest in continued employment." *Harris*, 331 Ill.App.3d at 934. Accordingly, Plaintiff cannot successfully state an FTCA claim[8] against the United States in connection with his UNICOR job based on this set of facts. Count 4 shall be dismissed with prejudice.

## Disposition

**T.G. Werlich**

**IT IS HEREBY ORDERED** that **WERLICH**, in his individual capacity, is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. **WERLICH** shall remain on the docket, in his official capacity only, for purposes of carrying out any injunctive relief that might be ordered.

---

[7] The FTCA "incorporates the substantive law of the state where the tortious act or omission occurred." *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1297 (7th Cir. 1991).

[8] This is not to say that a prisoner cannot assert other constitutional claims pertaining to loss of prison employment. For instance, under the right circumstances, a prisoner could pursue a First Amendment retaliation claim in connection with the loss of prison employment. Such claims may be pursued even if Plaintiff had no liberty/property interest in the employment. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2003).

**Severance**

**IT IS HEREBY ORDERED** that Plaintiff's claims relating to his job as an orderly at the prison law library in **COUNTS 5, 6, 7, and 8**, which are unrelated to the claims in Counts 1 through 4, are **SEVERED** into a new case. That new case shall be: Claims against **DEFENDANTS MORRIS, VARNEY, SMITH, VAN GRUNDY, WERLICH** (official capacity only), and **UNITED STATES of AMERICA**.

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint and Exhibits (Doc. 1 and Doc. 1-1)
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case.

**IT IS FURTHER ORDERED** that the **only claims remaining in this action, are COUNTS 1 through 4** against **DEFENDANTS GARVER** and **UNITED STATES of AMERICA**. Further, as set forth below, Count 4, the claim directed against the United States, does not survive threshold review under § 1915A. Accordingly, no claims remain in this action against the United States of America.

**Merits Review Counts 1-4**

**COUNTS 1, 2, 3, and 4** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendant **UNITED STATES of AMERICA** and **GARVER** are **DISMISSED** from this action with prejudice. The Clerk of the Court is **DIRECTED** to close the case and enter

judgment accordingly.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within sixty days of the entry of judgment. FED. R. APP. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. CIV. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: February 1, 2018**

*s/J. Phil Gilbert*
**District Judge**
**United States District Court**
